UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA INGLE, as Administrator of the Estate of CLIFTON CHAD INGLE, Deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 10-CV-536-JED-FHM ) |
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff filed this action in state court as Administrator of the Estate of Clifton Chad Ingle, deceased, seeking to recover accidental death benefits pursuant to a policy Ingle had with defendant, Metropolitan Life Insurance Company ("Metlife"). Metlife removed the action to this Court under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 2202 *et seq*. ("ERISA"). The parties disagree about two issues: which standard of review applies to this Court's review of Metlife's decision to deny benefits and whether Mr. Ingle's death falls under either of two exclusions found in the relevant policy.

**I.    Facts**

Clifton Ingle, age 26, died as a result of eating food tainted by Escherichia Coli ("E. coli") at the Country Cottage restaurant in Locust Grove, Oklahoma. On August 21, 2008, Mr. Ingle was admitted to Integris Mayes County Medical Center in nearby Pryor, Oklahoma, after becoming physically ill with abdominal cramps, nausea, and bloody diarrhea. (Rec. 111). The next day, he was transferred to Saint Francis Hospital in Tulsa, where he was found to have sepsis with subsequent shock, seizures, hypotension, and pulmonary, renal, and liver failure

resulting from the E. coli. (Rec. 109). Ingle's condition worsened on August 23, when he suffered several grand mal seizures and required a series of cardiopulmonary resuscitations. (Rec. 109).

On August 24, 2008, Mr. Ingle died. His Certificate of Death indicates that the cause of death was hemorrhagic colitis and that his death was attributable to "natural causes." (Rec. 64). The Chief Medical Examiner later explained, from a medical standpoint, that infectious disease is considered a natural cause of death and that the Examiner's determination was not a legal opinion. (Rec. 98). The record reveals that the E. coli outbreak which caused Mr. Ingle's death rendered 341 people ill, of which 70 required hospitalization. (Rec. 115). Following an investigation, the Country Cottage incident was determined to have been the largest E. coli outbreak in United States history. (Rec. 115).

Mr. Ingle worked for RCB Bank in Pryor, Oklahoma. (Rec. 93). At the time of his death, he was covered through his employer by a Group Policy issued by Metlife (the "Policy"), which serves as the claim administrator for the Policy. The Policy provided, among other benefits, accidental death and dismemberment ("AD&D") benefits in the amount of $120,000. (Rec. 52, 54). With respect to the AD&D benefits, the Policy stated:

> If You sustain an injury that is the Direct and Sole Cause of a Covered Loss described in the SCHEDULE OF BENEFITS, Proof of the accidental injury and Covered Loss must be sent to Us. When We receive such Proof we will review the claim and, if We approve it, We will pay the insurance in effect on the date of the injury.
>
> Direct and Sole Cause means that the Covered Loss occurs within 3 months of the date of the accidental injury and was a direct result of the accidental injury, independent of other causes.
>
> EXCLUSIONS
>
> We will not pay benefits under this section for any loss caused or contributed to by:

      1. physical or mental illness or infirmity, or the diagnosis or treatment of such illness or infirmity;

      2. infection, other than infection occurring in an external accidental wound;

(Rec. 36).

By a letter dated June 3, 2009, plaintiff, Cynthia Ingle, Mr. Ingle's surviving spouse, demanded payment of the AD&D benefit from Metlife. (Rec. 77). On July 9, 2009, Metlife responded, denying Mrs. Ingle's claim for benefits based upon its determination that the death was not "accidental," given the cause of death set forth in the Certificate of Death. (Rec. 87). Mrs. Ingle appealed Metlife's denial of benefits in an August 12, 2009 letter which set forth her contention that the death was indeed accidental under relevant caselaw. (Rec. 92-95). Metlife affirmed the denial of her claim. Its decision was based upon its initial finding that the death was not "accidental," and was supplemented with a finding that the illness and infection exclusions found in the Policy applied (Rec. 214-16). Metlife then unilaterally gave Mrs. Ingle a second appeal, which she pursued. (Rec. 94). The second appeal was, like the first, denied by Metlife. There, however, Metlife abandoned its position that Mr. Ingles' death was not accidental, and instead, based its decision only upon the illness and infection exclusions. (Rec. 224-26). Metlife's decision was also supported by the outcome of a referral of the case to Dr. Derrick Bailey, a medical underwriter, for a medical opinion. Dr. Bailey concluded that Mr. Ingle died as a result of "a food borne bacterial illness" and "infection." (Rec. 223). Shortly thereafter, plaintiff filed suit in Mayes County District Court and Metlife removed the action to this Court. (*See* Doc. 2-2).

## II. Standard of Review

As an initial matter, the Court must establish the proper standard of review for plaintiff's ERISA claim. Plan beneficiaries have the right to federal court review of benefit denials and terminations under ERISA. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). The default standard of review in an ERISA case is *de novo*. *Mantooth v. AT&T Umbrella Benefit Plan No. 1*, 804 F. Supp. 2d 1171, 1177-78 (N.D. Okla. 2011). However, when a plan gives discretionary authority to determine eligibility for benefits or to construe the terms of a plan to the plan administrator or fiduciary, the denial of benefits is to be reviewed under an arbitrary and capricious standard. *See Firestone*, 489 U.S. at 115 (applying a deferential standard of review when the plan administrator or fiduciary has discretionary authority to determine eligibility for benefits or to construe the terms of a plan); *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009).

Plaintiff urges the Court to apply a *de novo* standard of review in light of policy language, as well as what plaintiff describes as two Metlife admissions that the Policy does not give it discretionary authority. (Doc. 29, at 4). Plaintiff further argues that, given the uncertainty on the part of Metlife as to the nature of the Policy, an employee could not be expected to understand that the Policy gives Metlife discretionary authority. In response, Metlife argues that, under Tenth Circuit precedent, the Policy contains language conferring discretionary authority, thereby warranting the Court's application of the arbitrary and capricious standard.

The Policy states that:

If You sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss described in the SCHEDULE OF BENEFITS, Proof of the accidental injury and Covered Loss must be sent to Us. When We receive such Proof We will review the claim and, if We approve it, We will pay the Insurance in effect on the date of the injury.

(Rec. 36). The Policy defines "Proof" as "Written evidence satisfactory to *Us*...." (Rec. 20, italics added). The seminal case within this circuit regarding whether this type of language confers discretionary authority is *Nance v. Sun Life Assur. Co. of Canada*, 294 F.3d 1263 (10th Cir. 2002). In *Nance*, the Tenth Circuit distinguished between plan language requiring "satisfactory proof to [the claim administrator]" and plan language that requires only "satisfactory proof" without stating to whom the proof must be satisfactory. *Id*. at 1267-68. The court held that the former language conferred discretionary authority, which warranted review under the deferential arbitrary and capricious standard. *Id*. at 1268. Here, because the Policy requires evidence satisfactory to Metlife, the arbitrary and capricious standard would apply in accordance with *Nance*. That, however, does not conclude the analysis of the applicable standard of review.

In its Motion for Protective Order and to Strike Jury Trial Demand and Supporting Brief (Doc. 13), Metlife stated as follows:

> MetLife acknowledges that the Plan at issue here *does not grant it discretionary authority* to make benefit determinations or construe the terms of the Plan. Thus, the Court should review *de novo* MetLife's benefit determination that Plaintiff is not entitled to Accidental Death benefits under the Plan.

(Doc. 13, at 3, italics added). In that brief, Metlife utilized the *de novo* standard of review to argue that the Court should limit its review to solely the administrative record. (*Id*.). Further, Metlife pointed to the *de novo* standard of review as a distinguishing feature throughout its brief. (*See, e.g., id*., at 5 n.3 ("As previously stated, because the Court should review *de novo* MetLife's benefit determination, *Glenn* does not apply."))[1] Plaintiff never responded to Metlife's Motion for Protective Order, which Magistrate Judge McCarthy granted. (Doc. 19). In

---

[1] Metlife was referring to *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), a Supreme Court case regarding plan administrator conflicts of interest.

addition, the administrative record contains one representation that Metlife does not have discretionary authority under the Policy. (Rec. 229). In its briefing related to the administrative record, Metlife addresses only the latter statement regarding the appropriate standard of review, arguing that "this lone page does not qualify as an admission as to the standard of care applicable to this case or a waiver by someone qualified to understand the significance of the standard of view…." (Doc. 33, at 2).

The parties cited no authority with respect to the issue of potential waiver, but at least one circuit court has explicitly held that a party cannot waive the standard of review in an ERISA case. In *Izzarelli v. Rexene Products Co.*, 24 F.3d 1506, 1519 (5th Cir. 1994), the plaintiffs argued that the defendants had waived application of the arbitrary and capricious standard of review. Based upon the commonly held position among circuit courts that the appropriate appellate standard of review cannot be waived, the Fifth Circuit held that the district court's ERISA standard of review was not waivable by the parties. *Id.* at n.4; *see also Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 660 n.4 (6th Cir. 2004) (suggesting, though not explicitly holding, that parties cannot waive ERISA standard of review). Given the uncertainty as to how this issue would be resolved by the Tenth Circuit, the Court will look only to the language of the Policy and apply the arbitrary and capricious standard of review.[2]

### III.     Review of the Metlife's Determination

Metlife has not contested, for purposes of the Court's review of its decision, that Mr. Ingle's death was accidental under the Policy. Metlife, however, does maintain that his death is not covered by the AD&D benefit in light of the "illness" and "infection" exclusions. These

---

[2] In the end, whether an arbitrary and capricious or *de novo* standard applies is of little consequence, as the Court notes that the outcome would be the same had a *de novo* standard been mandated by the Policy's language.

6

exclusions prevent recovery of the AD&D benefit if the insured's death is caused by "physical or mental illness or infirmity, or the diagnosis or treatment of such illness or infirmity" (the "illness exclusion") or by "infection, other than infection occurring in an external accidental wound" (the "infection exclusion") (Rec. 36). Plaintiff argues that "Mr. Ingle did not suffer from either an illness or an infection – he had food poisoning," and that "[a]ny disease or infection process that occurred resulted solely and exclusively from that accidental food poisoning and must be considered a part thereof." (Doc. 32, at 2).

Plaintiff relies upon four cases in support of her position. The first, *New York Life Ins. Co. v. Wilson*, 178 F.2d 534, 536 (9th Cir. 1949), involved an accidental death policy, which provided an exclusion "where death results 'directly or indirectly, from infirmity of mind or body, from illness or disease.'" The *Wilson* court held that an Idaho state court would likely permit recovery under a rule applied in several other states providing that "[s]uch provisions apply only to bodily infirmity or disease existing prior to the accident or contracted subsequent to and independently of the accident." *Id*. at 536.

*Rastogi v. AMEX Assurance Co*., 2008 WL 5101676 (W.D. Ky. Nov. 26, 2008) involved a policy excluding "disease ... even if the proximate or precipitating cause of the loss is an accidental bodily injury." *Id*. at *2. The plaintiff in *Rastogi* died of a fatal infection caused by a blood-borne virus contracted when he was bitten by an infected mosquito while on a trip to India. *Id*. at *1. The *Rastogi* court, relying on Kentucky law, held that the defendant's motion to dismiss, which sought application of the disease exclusion, should be denied because "[t]he connection between the disease and the accident [were] so direct that the accident and the mortal disease are essentially intertwined." *Id*. at *5.

7

Likewise, in *J.C. Murphy v. Cont'l Cas. Co.*, 269 So.2d 507 (La. App. 1972), the court addressed the applicability of a disease exception. There, the decedent had ruptured her esophagus while choking on a plum pit, but died from pneumonitis and mediastinitis caused by the rupture. Applying Louisiana law, the court held the disease exclusion inapplicable, stating:

> The rule, as regards this issue, is that to defeat recovery, *sickness or disease must be established as the predominant cause of death*. Moreover, if an injury aggravates an existing illness or disease, thereby accelerating the death of the assured, death is held to result directly and independently of all other causes. In other words, if death would not have occurred when it did but for the injury resulting from the accident, it was the direct, independent and exclusive cause of death at that time, even though death was hastened by the diseased condition.

*Id*. at 518 (italics added).

The last, *Neiman v. Aetna Life Insurance Co.*, 83 F.2d 753 (6th Cir. 1936), involved the applicability of an exclusion for deaths caused by bacterial infections. The plaintiff was injured when a bus backed into his car. The injuries suffered in the accident ultimately resulted in a streptococcic infection leading to the plaintiff's death. The court found the exclusion inapplicable because the infection resulted from the accident and "[u]nder such circumstances the death is attributable to the accident, and not to the disease." *Id*. at 756.

As defendant correctly points out, none of these are ERISA cases. As such, they involve the application of state law principles that are not necessarily in play in the context of an ERISA action. This is a problem for plaintiff because, generally speaking, ERISA preempts state law. *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 363 (2002). In discussing the extent of this preemption, the Tenth Circuit has stated:

> ERISA's preemption clause precludes state laws from modifying or disregarding the provisions of an ERISA plan for two reasons. First, such state laws (whether statutory or common law) may differ from state to state, subjecting a plan to conflicting state regulation.

\*   \*   \*

> As we discussed above in our discussion of ERISA preemption of equitable estoppel, ERISA is concerned with state law doctrines that serve to modify a plan because such doctrines could destabilize the plan as well as subject it to conflicting state regulation. However, these concerns apply only where the potential modification is material.

*Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1051-52 (10th Cir. 1992).[3] Thus, state law, be it statutory or common law, is preempted by ERISA if it would serve to modify a plan in a material way. *See id*. at 1052. The state law principles applied in the cases cited by plaintiff – essentially slight variations of the predominant cause doctrine – would each serve to modify the Policy at issue because they would rewrite the agreement to modify the Policy's exclusions. *See Pirkheim v. First UNUM Life Ins. Co*., 50 F. Supp. 2d 1018, 1027 (D. Colo. 1999) *aff'd sub nom. Pirkheim v. First Unum Life Ins*., 229 F.3d 1008 (10th Cir. 2000) (finding predominant cause doctrine inapplicable based upon ERISA preemption). Accordingly, the state common law doctrines espoused in the cases plaintiff urges the Court to follow are preempted by ERISA and inapplicable here.

The Court is left to interpret whether the plain language of the Policy would exclude the circumstances of Mr. Ingle's death from its coverage. The Court finds that it does. In reaching this decision, the Court limits its ruling to a finding that the infection exclusion bars plaintiff's recovery under the Policy. Of the two policy exclusions at issue, this exclusion is the most clearly applicable and is sufficient standing alone to dictate the outcome. The infection exclusion exempts from coverage any death which is caused or contributed to by "infection, other than infection occurring in an external accidental wound." (Rec. 36). This language is clear and unambiguous.

---

[3] The second "reason" cited in *Peckham* is not pertinent to the preemption question before the Court.

In applying the infection exclusion, Metlife utilized the American Heritage Dictionary definition, which provides that an infection is an "[i]nvasion by and multiplication of pathogenic microorganisms in a bodily part or tissue, which may produce subsequent tissue injury and progress to overt disease through a variety of cellular or toxic mechanisms." (Rec. 215). Based upon a review of the administrative record and the parties' briefing, there is no dispute that Mr. Ingle died of hemorrhagic colitis caused by E. coli bacteria. Thus, the manner in which Mr. Ingle died, though tragic and unexpected, meets the definition of an infection under its ordinary meaning. The method by which these bacteria were delivered into Mr. Ingle's body – here, his consumption of food at the Country Cottage restaurant – does not alter the effect of this exclusion. Accordingly, the Court finds that Metlife's determination that the infection exclusion barred plaintiff's recovery of AD&D benefits was correct *and* was neither arbitrary nor capricious.

**IT IS THEREFORE ORDERED** that Metlife's final decision to deny plaintiff's AD&D benefits is hereby **affirmed.** A separate judgment is filed herewith.

**SO ORDERED** this 23rd day of May, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE